UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------X

NEW YORK ROAD RUNNERS, INC.,      :

                     :   Case No.

        Plaintiff,       :

                     :   **COMPLAINT**

  -against-        :

                     :   **JURY TRIAL DEMANDED**

NEW YORK CITY RUNS, INC.,       :

                     :

        Defendant.     :

----------------------------------------------------------X

Plaintiff New York Road Runners, Inc. ("NYRR"), by and through its undersigned attorneys, hereby submits this Complaint against Defendant New York City Runs, Inc. ("NYCRuns") and demands a trial by jury of all the claims and issues so triable.

## NATURE OF THE ACTION

1.     Plaintiff NYRR—one of the world's premiere running organizations and organizer of the NEW YORK CITY MARATHON® running event—brings this action to stop consumer confusion caused by the blatant infringement of its trademarks BROOKLYN HALF® and BROOKLYN HALF MARATHON (the "BROOKLYN HALF Marks"), which it has used in connection with one of the longest standing and most popular half-marathon running events for more than 40 years.

2.     Defendant NYCRuns is misleading consumers and capitalizing on the goodwill in the BROOKLYN HALF Marks by offering its own half-marathon running event under the trademarks BROOKLYN HALF MARATHON and BROOKLYN MARATHON AND HALF MARATHON (the "Infringing Marks").

3.     Not only is there a risk of potential confusion between the Infringing Marks and NYRR's BROOKLYN HALF Marks, numerous consumers actually have been confused. Among other things, a number of people have mistakenly registered for events branded with the

Infringing Marks when they intended to register for NYRR's BROOKLYN HALF- and BROOKLYN HALF MARATHON-branded running event.  In addition, consumers have criticized NYCRuns' events as inadequately staffed and poorly organized, which has caused harm to NYRR and to consumers who have been confused by the Infringing Marks and mistakenly run NYCRuns' events bearing the Infringing Marks thinking that they were NYRR's events.

4.       Despite NYRR's multiple efforts to resolve this matter amicably and the parties' extensive settlement negotiations, NYCRuns refuses to cease use of the Infringing Marks and continues to promote its 2024 event under the identical trademark BROOKLYN HALF MARATHON.  NYCRuns' acts will continue to cause confusion and jeopardize the good reputation and goodwill NYRR has painstakingly built in its BROOKLYN HALF Marks over the course of the last four decades.

5.       NYRR brings this lawsuit for trademark infringement and unfair competition to protect the valuable goodwill in its longstanding brands and protect consumers from continued confusion.

## THE PARTIES

6.       NYRR is a New York non-profit corporation with its principal place of business at 156 West 56th Street, 5th floor, New York, NY 10019.

7.       On information and belief, NYCRuns is a New York corporation with its principal place of business at 61 9th Street, Suite C2, Brooklyn, NY 11215.

## JURISDICTION AND VENUE

8.       This action arises under the Lanham Act, 15 U.S.C. § 1051, *et seq.*; the New York General Business Law, Sections 349 and 360-L; and the common law of the State of New York.

9.     The Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367.

10.     This Court has personal jurisdiction over NYCRuns because it is a New York state corporation located in and doing business in this district.  Further, NYCRuns has committed and threatens to commit trademark infringement and other torts in this district; has caused injury to NYRR and its property in this district; and has purposely and directly targeted its activities at this district.

11.     Venue is proper in this district under 28 U.S.C. § 1391.

### NYRR AND ITS RUNNING EVENTS

12.     Organized in 1958 as a local running club, NYRR's mission is to help and inspire people through running—whether they are beginner runners, competitive runners, or professional athletes.  Now in its 65th year, NYRR is one of the world's premiere running organizations, serving more than 495,000 people at in-person adult and youth events and programs, 137,000 students through its Rising New York Road Runners program, and 87,000 runners in virtual races for adults.

13.     NYRR has a rich history in New York, where it organizes, arranges, and conducts some of the world's most popular running events, including the NEW YORK CITY MARATHON-branded running event, which is now the largest marathon-length event in the world.

14.     NYRR also offers half-marathon-length events and other races in New York City. The most popular of these events is the half-marathon running event NYRR hosts in Brooklyn, under the BROOKLYN HALF Marks.  Second only to the NEW YORK CITY MARATHON-

branded running event, the BROOKLYN HALF-branded running event has the most participants of any of NYRR's events.

15.     NYRR prides itself on hosting races that are well-planned and professionally staffed, with courses that are clearly marked, clean, and full of high-quality, race-day amenities, including thoughtfully placed water stations and bathroom facilities.  NYRR's BROOKLYN HALF- and BROOKLYN HALF MARATHON-branded running event is no different, and is also known for its challenging, thoughtfully designed, and scenic course that starts at the Brooklyn Museum, passes through Prospect Park, and finishes on the Coney Island boardwalk.

16.     Conducted annually[1] since the inaugural race in 1981, NYRR's BROOKLYN HALF- and BROOKLYN HALF MARATHON-branded running event has become the country's most popular half marathon running event with more than 25,000 runners participating in the 2023 race.

17.     Indeed, the race is so popular that NYRR cannot accept everyone who wishes to run by simply allowing them to sign up.  Instead, runners can enter only if they qualify through certain methods, or are chosen in a competitive drawing.  There are numerous news articles and web pages dedicated to explaining these options.  For example, in January 2019, *Runner's World* published an article titled, "Want to Run the Brooklyn Half Marathon? Here's How to Get Into the 2020 Race," with tips and steps on how to enter the race.  Running USA also published a page with similar information for the 2022 race.  True and correct copies of those articles are annexed hereto as Exhibit A.

18.     Importantly, runners in the BROOKLYN HALF- and BROOKLYN HALF MARATHON-branded running event frequently use the race as a way to qualify for NYRR's

---

[1] During 2020 and 2021 the race was held virtually due to the COVID-19 pandemic.

other events, including the coveted NEW YORK CITY MARATHON-branded running event

and the NYC HALF-branded running event, the latter of which is the second most popular half-

marathon in the United States.

19.     Given the longevity, popularity, and importance of the BROOKLYN HALF- and

BROOKLYN HALF MARATHON-branded running event, it is no surprise that the event has

been the subject of significant media coverage.  For example, in 2019, *Runner's World*

recognized it as "one of the most popular" half marathons in the country.  *See* Exhibit A.  In

2013, *The New York Times* described the race as having "a picturesque finish along the Coney

Island Boardwalk," and recognized how the race was "reconfigured as a way to help th[e]

community economically."  A true and correct copy of that article is annexed hereto as Exhibit

B.  ABC, CBS, Pix11, and the *New York Post* have also covered the race in recent years.

## NYRR'S BROOKLYN HALF MARKS

20.     Since at least as early as 1981, NYRR has used BROOKLYN HALF Marks in

U.S. interstate commerce in connection with organizing, arranging, and conducting running

events (the "NYRR Services").

21.     Since at least as early as 1987, NYRR has used the BROOKLYN HALF

trademark in U.S. interstate commerce in connection with apparel associated with its running

events (collectively with "NYRR Services," the "NYRR Goods and Services").

22.     As a result of the foregoing, NYRR owns all right, title, and interest in and to the

BROOKLYN HALF Marks for the NYRR Goods and Services, and all goodwill associated

therewith.

23.     NYRR also owns U.S. Registration No. 5,169,507 for BROOKLYN HALF for

"organizing, arranging and conducting running events" in International Class 41 (the

"BROOKLYN HALF Registration").  The BROOKLYN HALF Registration issued on March

28, 2017 and is based on use of the BROOKLYN HALF trademark since at least as early as

1981.  A true and correct copy of the current status of the BROOKLYN HALF Registration, as

shown in the Trademark Status & Document Retrieval Database of the United States Patent and

Trademark Office ("USPTO"), is attached hereto as Exhibit C.

24.     On February 14, 2024, NYRR filed U.S. Application Ser. No. 98/404,926 with

the USPTO, seeking to register BROOKLYN HALF for "apparel, namely, shirts" in

International Class 25 ("'926 Application"), based on use since 1987.  A true and correct copy of

the current status of the '926 Application, as shown in the Trademark Status & Document

Retrieval Database of the USPTO, is annexed hereto as Exhibit D.

25.     The BROOKLYN HALF Registration is valid and subsisting, and is incontestable

within the meaning of 15 U.S.C. §§ 1115(b) and 1065.  Consequently, that registration

constitutes conclusive evidence of the validity of the subject mark thereof, the registration

therefor, and of NYRR's exclusive right to use the mark in connection with the services set forth

in that registration.

26.     Since the adoption and first use of the BROOKLYN HALF Marks, NYRR has

devoted and continues to devote substantial time, money, and effort in promoting the

BROOKLYN HALF Marks to identify the source of the NYRR Goods and Services sold under

those marks.

27.     Consumers recognize the BROOKLYN HALF Marks as identifying the NYYR

Goods and Services.

28.     The BROOKLYN HALF Marks are inherently distinctive and/or have acquired

distinctiveness.

6

29.     Consumers have come to understand that half-marathon length running events bearing the BROOKLYN HALF Marks emanate from the same source—NYRR—and will be the same, consistent, and high-quality running events that have earned NYRR its unparalleled reputation in the racing and running community both nationwide and globally.

30.     As a result of its more than 40 years of continuous and substantially exclusive use of the BROOKLYN HALF Marks in United States interstate commerce in connection with the NYRR Goods and Services, as well as significant consumer growth and interest in the BROOKLYN HALF- and BROOKLYN HALF MARATHON-branded running event, and considerable media coverage promoting the BROOKLYN HALF Marks, the BROOKLYN HALF Marks have accrued tremendously valuable goodwill that belongs solely to NYRR.

**NYCRUNS' INFRINGING ACTS**

31.     On information and belief, Defendant NYCRuns, like NYRR, organizes and hosts running events in New York City and, in or around 2023, Defendant began using NYRR's trademark BROOKLYN HALF MARATHON in U.S. interstate commerce in connection with its own Brooklyn-based half-marathon-length running event and apparel.  On information and belief, Defendant also uses the trademark BROOKLYN MARATHON AND HALF MARATHON in U.S. interstate commerce in connection with its running events and apparel.

32.     The Infringing Marks (as defined above) are identical or nearly identical to the BROOKLYN HALF Marks and are used by Defendant for goods and services that are identical or closely similar to the NYRR Goods and Services.

33.     Defendant's goods and services, however, do not enjoy the same established, quality reputation as NYRR's.  For example, in 2023, Defendant served approximately 75,000 runners (according to Defendant's website), while NYRR served more than 495,000 runners in

its in-person races and events, 137,000 students through its Rising New York Road Runners program, and 87,000 runners through NYRR's virtual races.

34.     In fact, after its 2022 BROOKLYN MARATHON AND HALF MARATHON-branded race, Defendant eliminated its full marathon length course because it was "not up to the standards" of NYCRuns and scaled back its 2023 event.  A true and correct copy of the NYCRuns' web page is annexed hereto as Exhibit E.

35.     As a result of NYCRuns' use of the Infringing Marks for its running event and apparel actual confusion has already occurred.  For example, a number of consumers who registered for NYCRuns' running event bearing the Infringing Marks have contacted NYRR based on their mistaken belief that they signed up for NYRR's BROOKLYN HALF- and BROOKLYN HALF MARATHON-branded running event.  Some runners have even mistakenly volunteered at NYCRuns' event, under the misimpression that they are volunteering at NYRR's BROOKLYN HALF-branded running event and that their service will help qualify them for the NEW YORK CITY MARATHON-branded running event.

36.     NYCRuns' use of the Infringing Marks has deprived and is depriving NYRR of the ability to control the quality of the goods and services offered under the BROOKLYN HALF Marks, and the ability to control the reputation of and goodwill in those marks.

37.     NYRR's rights in the BROOKLYN HALF Marks are prior to any trademark rights NYCRuns may have in the Infringing Marks for NYCRuns' goods and services.

38.     NYCRuns' use of the Infringing Marks began long after NYRR first adopted the BROOKLYN HALF Marks for the NYRR Goods and Services and is without authorization from NYRR.

39.     The Infringing Marks are confusingly similar to the BROOKLYN HALF Marks in sight, sound, meaning, and commercial impression.

40.     The running events and apparel that NYCRuns markets, distributes, advertises, and sells under the Infringing Marks are the same as or highly related to the running events and apparel NYRR markets, distributes, advertises, and sells under the BROOKLYN HALF Marks.

41.     NYCRuns markets, distributes, advertises, and sells the goods and services branded with the Infringing Marks to runners and other consumers interested in running events, to the same consumers to whom NYRR markets, distributes, advertises, and sells goods and services under the BROOKLYN HALF Marks.

42.     NYCRuns markets, distributes, advertises, and sells the goods and services branded with the Infringing Marks in the same channels of trade in which NYRR provides the NYRR Goods and Services branded with the BROOKLYN HALF Marks, namely via a website, at running events, on social media, and—on information and belief—in marketing targeted to runners and other athletes.

43.     On information and belief, NYCRuns had actual and/or constructive knowledge of NYRR's existing trademark rights in and to the BROOKLYN HALF Marks for the NYRR Goods and Services before it began making unauthorized and infringing use of the Infringing Marks for the same or related goods and services.

44.     On information and belief, NYCRuns commenced use of the Infringing Marks in bad faith and with the intent to confuse consumers and capitalize on the enormous goodwill in NYRR's BROOKLYN HALF Marks.

45.     In February 2023, NYRR sent NYCRuns a letter expressing its concerns that NYCRuns' use of the Infringing Marks would cause consumer confusion.  Although NYCRuns

responded to that letter and the parties have engaged in settlement negotiations, NYCRuns refuses to cease use of the Infringing Marks, and is currently using the BROOKLYN HALF MARATHON trademark prominently in the marketing and advertising for its 2024 running event, making additional consumer confusion practically inevitable.  On information and belief, NYCRuns is using and intends to continue using both of the Infringing Marks in connection with its future half-marathon- and full-marathon-length running events.

46.     NYCRuns' use of the Infringing Marks is likely to cause consumers to mistakenly believe that NYCRuns' goods and services emanate from or are otherwise associated with NYRR.

47.     The improper use of the Infringing Marks by NYCRuns, as described herein, is likely to cause confusion, mistake and/or deception among the public as to the source of the NYCRuns' goods and services offered under the Infringing Marks.

48.     On information and belief, NYCRuns has used and is using the Infringing Marks as described above to identify and attract attention to NYCRuns' goods and business and to interfere with and disrupt the business and operations of NYRR operating in United States commerce.

49.     NYCRuns' acts described herein have caused NYRR irreparable harm for which it has no adequate remedy at law.

50.     NYCRuns' acts represent a serious threat to consumers and constitute trademark infringement and unfair competition for which NYRR seeks compensatory damages.

## FIRST CAUSE OF ACTION
### (Infringement of a Registered Trademark Under 15 U.S.C. § 1114)

51.     Paragraphs 1-50 above are realleged and reincorporated herein by reference as if set forth in full.

52.     Since at least as early as 1981, NYRR has continuously used the BROOKLYN HALF trademark in U.S. interstate commerce for organizing, arranging, and conducting running events.

53.     NYRR owns all right, title and interest in and to the BROOKLYN HALF Registration, which is incontestable under 15 U.S.C. §§ 1115(b) and 1065 and constitutes conclusive evidence of the validity of the subject mark thereof, the registration therefor, and of NYRR's exclusive right to use the mark in connection with the services set forth in that registration.

54.     NYRR's rights in and to the BROOKLYN HALF Registration and the subject mark thereof are prior and superior to any rights Defendant may have in the Infringing Marks.

55.     Defendant's use of the Infringing Marks in U.S. commerce infringes NYRR's rights in the BROOKLYN HALF Marks and BROOKLYN HALF Registration, including by causing consumers to mistakenly believe that Defendant or its goods and services offered under the Infringing Marks are associated with NYRR and/or the services offered under the subject mark of the BROOKLYN HALF Registration, and is without authorization from NYRR.

56.     Defendant's use and threatened continued use of the Infringing Marks are likely to cause confusion, to cause mistake, and to deceive as to the source, origin or sponsorship of the goods and services offered by Defendant under those marks.

57.     Defendant's use and threatened continued use of the Infringing Marks have caused and threaten NYRR with irreparable injury for which it has no adequate remedy at law.

58.     Defendant is liable to NYRR for trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

**SECOND CAUSE OF ACTION**
**(Unfair Competition Under 15 U.S.C. § 1125(A)(1)(A))**

59.     Paragraphs 1-58 above are realleged and reincorporated herein by reference as if set forth in full.

60.     Since at least as early as 1981, NYRR has continuously used the BROOKLYN HALF Marks in U.S. interstate commerce for organizing, arranging, and conducting running events.

61.     Since at least as early as 1987, NYRR has continuously used the BROOKLYN HALF trademark in U.S. interstate commerce for apparel.

62.     NYRR owns all right, title, and interest in and to the BROOKLYN HALF Marks, including all common law rights and all goodwill associated therewith.

63.     NYRR's rights in and to the BROOKLYN HALF Marks are prior and superior to any rights Defendant may have in the Infringing Marks.

64.     Defendant's use and threatened continued use of the Infringing Marks are likely to cause confusion, to cause mistake, and to deceive as to the source, origin or sponsorship of the goods and services offered by Defendant under the Infringing Marks.

65.     Defendant's use and threatened continued use of the Infringing Marks are likely to cause the public wrongly to associate NYRR with Defendant, to believe that NYRR is somehow affiliated or connected with Defendant, and/or to confuse Defendant and their goods and services with those of NYRR.

66.     Defendant's use and threatened continued use of the Infringing Marks have caused and threaten NYRR with irreparable injury for which it has no adequate remedy at law.

67.     Defendant is liable to NYRR for trademark infringement in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

### THIRD CAUSE OF ACTION
**(Refusal of U.S. Trademark Application Serial No. 90/874,072
Under 15 U.S.C. § 1119)**

68.     Paragraphs 1-67 above are realleged and reincorporated herein by reference as if set forth in full.

69.     Since at least as early as 1981, NYRR has continuously used the BROOKLYN HALF Marks in U.S. interstate commerce for organizing, arranging, and conducting running events.

70.     Since at least as early as 1987, NYRR has continuously used the BROOKLYN HALF trademark in U.S. interstate commerce for apparel.

71.     NYRR owns all right, title, and interest in and to the BROOKLYN HALF Marks, including all common law rights and all goodwill associated therewith.

72.     NYRR also owns all right, title, and interest in and to the BROOKLYN HALF Registration, which is incontestable under 15 U.S.C. § 1065 and constitutes conclusive evidence of the validity of the subject mark thereof, the registration therefor, and of NYRR's exclusive right to use the mark in connection with the services set forth in that registration.

73.     On August 10, 2021, Defendant filed U.S. Application Ser. No. 90/874,072 with the USPTO, seeking to register BROOKLYN MARATHON & HALF MARATHON for "athletic and sporting event services, namely, arranging, organizing and operating athletic competitions in the nature of running competitions; organizing sporting events, namely, running races; providing online information in the field of running races" in International Class 41 (the "'072 Application"). In the '072 Application, Defendant claims a first use date of 2018. A true and correct copy of the '072 Application is annexed hereto as Exhibit F.

74.     Based on the foregoing, NYRR's rights in and to the BROOKLYN HALF Marks, and the BROOKLYN HALF Registration and the subject mark thereof, are prior and superior to any rights Defendant may have in the trademark BROOKLYN MARATHON & HALF MARATHON or the '072 Application.

75.     Defendant's registration of the trademark BROOKLYN MARATHON & HALF MARATHON is likely to cause confusion, to cause mistake, and to deceive as to the source, origin or sponsorship of the goods and services offered by Defendant under that mark.

76.     Defendant is not entitled to register the trademark BROOKLYN MARATHON & HALF MARATHON.

77.     As a direct and proximate result of Defendant's unauthorized '072 Application, NYRR is now, and will be, irreparably injured and damaged by that application, and unless the '072 Application is refused registration by order of the Court, NYRR will suffer further harm to its name, reputation, and goodwill.

78.     Pursuant to Section 37 of the Lanham Act, 15 U.S.C. § 1119, the '072 Application and the registrability of BROOKLYN MARATHON & HALF MARATHON is related to the subject matter of this action, namely to the infringement of NYRR's BROOKLYN HALF Registration and the subject mark thereof.

79.     Pursuant to Section 37 of the Lanham Act, 15 U.S.C. § 1119, NYRR seeks an order from this Court directing the USPTO to refuse registration of the trademark BROOKLYN MARATHON & HALF MARATHON and to deny the '072 Application.  Alternatively, this Court should direct Defendant to abandon, with prejudice, the '072 Application.

## FOURTH CAUSE OF ACTION
**(Deceptive Acts and Practices in Violation of N.Y. Gen. Bus. Law Section 349)**

80.     Paragraphs 1-79 above are realleged and reincorporated herein by reference as if set forth in full.

81.     Since at least as early as 1981, NYRR has continuously used the BROOKLYN HALF Marks in U.S. interstate commerce for organizing, arranging, and conducting running events.

82.     Since at least as early as 1987, NYRR has continuously used the BROOKLYN HALF trademark in U.S. interstate commerce for apparel.

83.     NYRR owns all right, title, and interest in and to the BROOKLYN HALF Marks, including all common law rights and all goodwill associated therewith.

84.     NYRR's use of and reputation in the BROOKLYN HALF Marks in New York State long pre-dates Defendant's use of the Infringing Marks.

85.     Defendant has caused, and continues to cause, irreparable injury to NYRR and the public at large, by providing and/or selling running events and apparel to consumers, including consumers in New York, and is engaged in deceptive acts or practices in the conduct of a business, trade, or commerce in violation of New York's General Business Law § 349.

86.     Defendant's acts affect consumers and the public in New York, because (among other things) Defendant's use and threatened continued use of the Infringing Marks have caused a number of consumers to mistakenly register for events branded with the Infringing Marks when they intended to register for NYRR's BROOKLYN HALF- and BROOKLYN HALF MARATHON-branded running events, which has caused and will continue to cause injury to consumers and the public at large.

87.     Defendant adopted the Infringing Marks in an effort to capitalize on the goodwill in NYRR's BROOKLYN HALF Marks and to confuse runners into participating in its event instead of NYRR's event.  Defendant's misleading actions have materially affected consumers, including because a number of consumers who registered for Defendant's running event have contacted NYRR based on their mistaken belief that they had signed up for NYRR's BROOKLYN HALF- and BROOKLYN HALF MARATHON-branded running event and only learned then that they had registered with and paid fees to the wrong organization.

88.     Defendant's use and threatened continued use of the Infringing Marks have caused and threatens NYRR with irreparable injury for which it has no adequate remedy at law.

89.     Defendant's acts, as described above, constitute deceptive acts and practices in violation of N.Y. Gen. Bus. Law § 349 and Defendant is liable to NYRR for violation of N.Y. Gen. Bus. Law § 349.

## FIFTH CAUSE OF ACTION
**(Injury to Business Reputation and Dilution in Violation of N.Y. Gen. Bus. Law § 360-L)**

90.     Paragraphs 1-89 above are realleged and reincorporated herein by reference as if set forth in full.

91.     Since at least as early as 1981, NYRR has continuously used the BROOKLYN HALF Marks in U.S. interstate commerce for organizing, arranging, and conducting running events.

92.     Since at least as early as 1987, NYRR has continuously used the BROOKLYN HALF trademark in U.S. interstate commerce for apparel.

93.     NYRR owns all right, title, and interest in and to the BROOKLYN HALF Marks, including all common law rights and all goodwill associated therewith.

94.    The BROOKLYN HALF Marks are inherently distinctive and/or have acquired distinctiveness.

95.    The BROOKLYN HALF Marks are well known in and around New York State to the relevant public, namely the public interested in running events.

96.    NYRR's use of and reputation in the BROOKLYN HALF Marks in New York State long pre-dates Defendant's use of the Infringing Marks.

97.    Defendant's use of the Infringing Marks, without authorization from NYRR, is causing consumers to believe that Defendant's running events bearing the Infringing Marks are associated with NYRR's celebrated BROOKLYN HALF- and BROOKLYN HALF MARATHON-branded running event.

98.    By its use of the Infringing Marks as set forth above, Defendant has injured the business reputation of NYRR and diluted the distinctive quality of the BROOKLYN HALF Marks, in violation of New York General Business Law § 360-L.

99.    Defendant's use and threatened continued use of the Infringing Marks have caused and threaten NYRR with irreparable injury for which it has no adequate remedy at law.

100.   Defendant is liable to NYRR for violations of N.Y. Gen. Bus. Law § 360-L.

**SIXTH CAUSE OF ACTION**
**(Unfair Competition Under New York Common Law)**

101.   Paragraphs 1-100 above are realleged and reincorporated herein by reference as if set forth in full.

102.   Since at least as early as 1981, NYRR has continuously used the BROOKLYN HALF Marks in U.S. interstate commerce for organizing, arranging, and conducting running events.

103. Since at least as early as 1987, NYRR has continuously used the BROOKLYN HALF trademark in U.S. interstate commerce for apparel.

104. NYRR owns all rights, title, and interest in and to the BROOKLYN HALF Marks, including all common law rights and all goodwill associated therewith.

105. NYRR's rights in and to the BROOKLYN HALF Marks are prior and superior to any rights Defendant may have in the Infringing Marks.

106. Defendant has used the Infringing Marks to promote its running events and apparel, causing a likelihood of confusion, and Defendant has done so in bad faith by continuing to use the Infringing Marks with knowledge of NYRR's prior rights in the BROOKLYN HALF Marks and after receiving NYRR's cease-and-desist letter.

107. Defendant's acts have unjustly enriched Defendant, and have allowed the Defendant to enjoy ill-gotten profits from the sale and/or use of its running events and apparel.

108. Defendant's acts, as described above, constitute unfair competition under New York State common law.

109. Defendant's use and threatened continued use of the Infringing Marks have caused and threaten NYRR with irreparable injury for which it has no adequate remedy at law.

110. Defendant is liable to NYRR for unfair competition under New York Common Law.

**SEVENTH CAUSE OF ACTION**
**(Trademark Infringement Under New York Common Law)**

111. Paragraphs 1-110 above are realleged and reincorporated herein by reference as if set forth in full.

112.    Since at least as early 1981, NYRR has continuously used the BROOKLYN HALF Marks in U.S. interstate commerce for organizing, arranging, and conducting running events.

113.    Since at least as early as 1987, NYRR has continuously used the BROOKLYN HALF trademark in U.S. interstate commerce for apparel.

114.    NYRR owns all rights, title, and interest in and to the BROOKLYN HALF Marks, including all common law rights and all goodwill associated therewith.

115.    NYRR's rights in and to the BROOKLYN HALF Marks are prior and superior to any rights Defendant may have in the Infringing Marks.

116.    Defendant's use and threatened continued use of the Infringing Marks are likely to cause confusion, to cause mistake, and to deceive as to the source, origin or sponsorship of the running events and apparel Defendant offers under the Infringing Marks.

117.    Defendant's use and threatened continued use of the Infringing Marks are likely to cause the public wrongly to associate NYRR with Defendant, to believe that NYRR is somehow affiliated or connected with Defendant, and/or to confuse Defendant and their goods and services with those of NYRR.

118.    Defendant's use and threatened continued use of the Infringing Marks have caused and threaten NYRR with irreparable injury for which it has no adequate remedy at law.

119.    Upon information and belief, Defendant committed the above alleged acts willfully, in bad faith, and in conscious disregard of NYRR's rights.  Defendant is liable to NYRR for trademark infringement under New York Common Law.

## EIGHTH CAUSE OF ACTION
### (Misappropriation Under New York Common Law)

120.    Paragraphs 1-119 above are realleged and reincorporated herein by reference as if set forth in full.

121.    NYRR has a property interest in the BROOKLYN HALF Marks and associated reputation and goodwill, which NYRR, at significant expense, has built up through the use, advertising, and promotion thereof.

122.    NYRR's rights in and to the BROOKLYN HALF Marks are prior and superior to any rights Defendant may have in the Infringing Marks.

123.    Defendant's conduct is commercially immoral and constitutes an attempt to profit from the labor, skill, expenditures, name and reputation of NYRR.

124.    Defendant's use and threatened continued use of the Infringing Marks have caused and threaten NYRR with irreparable injury for which it has no adequate remedy at law.

125.    Defendant is liable to NYRR for misappropriation under New York Common Law.

**WHEREFORE**, NYRR prays that the Court:

(i)    permanently enjoin Defendant's acts of trademark infringement, unfair competition, deceptive acts and practices, unlawful, injury to business reputation and misappropriation described herein;

(ii)    permanently enjoin Defendant's use of the Infringing Marks and any and all trademarks confusingly similar to the BROOKLYN HALF Marks for the marketing, advertisement, promotion, manufacture, distribution, offer for sale or render, and sale or render of running events, apparel, and any and all goods and services related to running events or apparel;

(iii)    direct the USPTO to deny Defendant's U.S. Trademark Application Serial No. 90/874,072;

(iv)    direct Defendant to voluntarily withdraw U.S. Trademark Application Serial No. 90/874,072;

(v)    award NYRR compensatory damages as provided by law;

(vi)    award NYRR statutory damages as provided by law;

(vii)    award NYRR punitive damages as provided by law;

(viii)    award NYRR its costs, disbursements, and attorneys' fees incurred in bringing this action; and

(ix)    award NYRR such other and further relief as the Court may deem just and proper.

Dated: New York, New York
February 16, 2024

Respectfully submitted,

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By: */s/ Kimberly M. Maynard*
Kimberly M. Maynard
Molly G. Rothschild
28 Liberty St., 35th Fl.
New York NY 10005
(212) 980-0120
kmaynard@fkks.com
mrothschild@fkks.com

*Attorneys for Plaintiff New York Road Runners, Inc.*