| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | |
| NEW YORK ROAD RUNNERS, INC.,<br><br>              Plaintiff,<br><br>-against-<br><br>NEW YORK CITY RUNS, INC.,<br><br>              Defendant. | Case No. 1:24-cv-01231<br><br>(Gujarati, J.)<br>(Marutollo, M.J.) |

**STIPULATION AND ORDER REGARDING**
**ELECTRONICALLY STORED INFORMATION**

Plaintiff New York Road Runners, Inc. ("Plaintiff") and Defendant New York City Runs, Inc. ("Defendant"), (each a "Party" and collectively, the "Parties"), by and through their counsel, hereby stipulate and agree to the following with respect to the production of electronically stored information and agree to the entry of this Stipulation as an Order of the Court (the "Stipulation and Order").

**I.    DEFINITIONS**

The following terms in this Stipulation and Order shall have the agreed-upon meanings set forth below. In addition, the definitions set forth in the applicable court rules, including without limitation the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Eastern District of New York, and Magistrate Judge Joseph A. Marutollo's Individual Motion Practices and Rules ("Local Rules"), are incorporated as if set forth fully herein and supplemented by the definitions set forth herein. Nothing herein shall limit the Parties from further defining terms in any discovery requests.

    A.    "Court" refers to the U.S. District Court for the Eastern District of New York.

    B.    "Custodian" refers to (i) individuals identified by the Producing Party as persons the Producing Party believes likely to have possession, custody and/or control of ESI relating to

the subject matter of this action, or (ii) data sources (non-human) that the Producing Party believes are likely to contain information relating to the subject matter of this action including departments or organizations for non-electronic documents or documents that are accessible for editing by more than a single user.

  C. "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a) and Local Rule 26.3(c). A draft or nonidentical copy is a separate document within the meaning of this term.

  D. "Electronically Stored Information" and "ESI" means any type of information that is or can be stored electronically on any electronic device and includes, without limitation, information created, manipulated, communicated, stored, and utilized in digital or electronic form, requiring the use of computing hardware or software.

  E. "Extracted Text" means the text extracted from a Native File and includes all header, footer, and document body information as well as any other text, including without limitation, comments, and tracked changes in Microsoft Word documents and notes in Microsoft PowerPoint documents.

  F. "Load File" means an electronic file containing information identifying a set of paper-scanned images or electronically processed files and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load File shall also contain data relevant to the individual documents, such as Metadata, coded data, and OCR or Extracted Text.

  G. "Metadata" means: a Concordance delimited text data file ("DAT") which contains the field level information identified. The standard delimiters for this file are as follows: Comma (ASCII Character 20), Quote (ASCII Character 254), Newline (ASCII Character 174).

The information identified includes (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system. In other words, Metadata means information about a particular data set or document that describes how, when, and by whom it was collected, created, accessed, modified, sent, received, and how it is formatted. Metadata includes without limitation: original file name, document creation date, document modification history, last modified date, transmittals, author(s), sender(s), and recipient(s).

  H. "Native File(s)" means ESI in the file type for (or of) the application in which such ESI is normally created, viewed, and/or modified.

  I. "OCR" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

  J. "Paper Discovery" means documents and things pursuant to Fed. R. Civ. P. 26 and 34 which were originally created or now exist in paper format and which may or may not have been converted into digital or electronic format.

  K. "PDF" and ".PDF" means a portable document format that provides an electronic image of text or text and graphics that can be viewed, printed, and electronically transmitted.

  L. "Producing Party" means a Party that produces ESI and/or Paper Discovery.

  M. "Receiving Party" means a Party to whom ESI is produced.

N. "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format (TIFF) image is an example of a Static Image.

O. "TIFF" and ".TIF," standing for Tagged Image File Format, means the graphic file format for storing bit-mapped images, with multiple compression formats and resolutions.

## II. GENERAL TERMS

A. **General.** The procedures and protocols set forth in this Stipulation and Order shall generally govern the identification, preservation, collection, and production of ESI in this action. Where appropriate, the procedures and protocols set forth in this Stipulation and Order shall also govern the identification, preservation, collection, and production of Paper Discovery in this action as well.

B. **Commitment to Good Faith Cooperation.** The Parties recognize the importance the Court places on cooperation and therefore commit to cooperate in good faith, including with regard to discovery obligations and attempts to resolve discovery disputes. ESI will be part of the discoverable material in this action and the Parties agree to cooperatively exchange in reasonably usable form as described below non-privileged, responsive discoverable material and use reasonable and proportional efforts in accordance with the Federal Rules of Civil Procedure and the Local Rules to identify, preserve, collect, and produce information.

C. **Each Party Bears its Own Costs.** Each Party shall bear its own costs with respect to its efforts to identify, preserve, collect, and produce ESI in accordance with this Stipulation and Order. The Parties reserve the right to move the Court to shift the costs related to discovery of ESI where appropriate including, for example, in response to requests or demands

that seek to impose additional burdens beyond the obligations outlined in this Stipulation and Order.

    **D.**  **Duty to Preserve Information.** Each Party has taken reasonable and good faith steps to prevent the loss, destruction, alteration, overwriting, deletion, shredding, incineration, or theft of any document within the Party's possession, custody or control and which the Party knows, or reasonably should know, falls within the scope of Fed. R. Civ. P. 26(b)(l).

    **E.**  **No Waiver and Objections Preserved.** By identifying, preserving, collecting, and producing ESI pursuant to this Stipulation and Order, the Parties: (1) do not waive any objections that they might have under the attorney-client privilege, work-product doctrine, and any other such privilege or immunity from discovery cognizable at law; (2) do not waive the protections under the attorney-client privilege, work-product doctrine, and any other such privilege or immunity from discovery cognizable at law, even in instances of the inadvertent production of privileged/protected/immunized documents and information; (3) do not admit that such ESI is relevant to the claims or defenses asserted in this action; and (4) do not concede that such ESI is admissible, in whole or in part, into evidence at any hearing or proceeding.

**III.**  **SCOPE OF ESI DISCOVERY**

    **A.**  **Temporal Limits.** The Parties will meet and confer about the relevant time period after serving responses to Requests for Production and Interrogatories. Any temporal limits that the Parties agree to will not affect preservation obligations. A Party is not precluded from requesting specific documents falling outside any agreed upon general temporal limits, and the other Party has the right to object to such a request.

    **B.**  **ESI Not Subject to Automatic Production.** The Parties agree that, for purposes of this Stipulation and Order, certain categories of ESI may not be particularly relevant and that, absent a specific request for such ESI, it may be needlessly costly and inefficient for either Party

to specifically search for and produce such ESI in response to discovery requests. These categories of ESI include, but are not limited to, the following: (a) deleted computer files or residual data, whether fragmented or whole; (b) data stored in random access memory (RAM), cache memory or in temporary or cache files, including internet history, web browser cache, and cookie files, wherever located; (c) data stored on photocopiers, scanners, and facsimile machines; (d) server, system or network logs; (e) electronic data temporarily stored by equipment or attached devices, provided that the data that is ordinarily preserved as part of any report is, in fact, preserved in its ordinary location and form; and (f) data duplicated in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to, system recovery backup tapes, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy. Notwithstanding the foregoing, if, on the date of this Stipulation and Order, either Party has an established policy that results in the routine preservation of any of the categories of information identified above, such Party shall continue to preserve such information in accordance with its policy and shall produce such information if, as, and when responsive to specific requests. In addition, nothing in this Stipulation and Order shall preclude the Parties from specifically requesting the categories of ESI identified in this paragraph.

  **C.**   **Rules of Construction.** The following rules of construction apply to all requested related to ESI:

    1.   **All/Each**. The terms "all" and "each" shall be construed as all and each.

    2.   **And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the

discovery request all responses that might otherwise be construed to be outside of its scope.

3. **Number.** The use of the singular form of any word includes the plural and vice versa.

D. **Searches for Responsive ESI.** The Parties shall search for ESI in all media and electronic files and databases that are reasonably likely to contain electronic documents or information responsive to document requests posed to them, including without limitation, email and electronic messaging systems, storage systems including cloud storage, external and internal databases, local hard drives (including, for example, personal computers, laptops, tablets and other electronic devices), and network hard drives (including shared network hard drives).

E. **Paper Discovery**. Each Party has an independent and separate obligation to produce documents that exist in paper format and shall produce such paper documents in TIFF format. Said paper documents will be OCR'ed for any extracted text contained in the documents. The scanned documents shall include page breaks just like in the original. For purposes of this Stipulation and Order, a Party's project file or other paper documents created in hard copy but stored in electronic format (e.g., scanned into .PDF) shall be considered paper documents subject to separate production under this paragraph. Upon request and a showing of good cause (i.e., issues with legibility or formatting), the Producing Party must make the original paper documents available for inspection at a mutually agreeable time and place.

F. **Disputes and Sampling**. The Parties shall make every effort to agree upon a reasonable scope of ESI subject to electronic discovery. The Parties may utilize sampling techniques in order to assist the Parties in determining the existence and frequency of responsive ESI within certain data sets. As an express condition precedent to seeking relief from the Court,

the Parties shall meet and confer in good faith to resolve any procedures or disputes that arise under this Stipulation and Order.

  **G.**  **Search Terms and the Productions.** The Parties shall endeavor to agree on the proposed search terms. The Parties may apply proposed search terms to certain custodians by agreement to ascertain the results, or, with or without the advice of vendors, use appropriate strategies to identify appropriate and inappropriate search terms.  For the avoidance of doubt, nothing herein prevents any Party from using technology assisted review or predictive coding as part of its documents review process. Notwithstanding any of the foregoing, the aforementioned search term protocols are not intended to alter a Party's discovery obligations under ==Fed. R. Civ. P. 26== or the Local Rules to produce documents or ESI that are located without the need for search terms.

    Provided that Productions are delivered in an encrypted format with encryption key (i.e., password) transmitted contemporaneously under separate cover, Parties may use any reasonably secure method of transfer including File Transfer Protocol (FTP) site, ShareFile, and Direct Link. Only after good faith attempts at providing Productions via internet transfers have failed, productions may also be placed on an encrypted CD, DVD, thumb drive, or external hard drive with the Producing Party contemporaneously providing the encryption key under separate cover.

  **H.**  **ESI Date and Time Processing**. Each Party's ESI should be processed in the Coordinated Universal Time (UTC) time zone.

  **I.**  **Privilege Log**. The Parties shall create a privilege log to identify any documents withheld from production either in whole or in part. The Parties agree that, absent a showing of good cause, documents created after February 21, 2023 (the date of Plaintiff's initial letter

protesting Defendant's trademark infringement and unfair competition) that are otherwise protected by the attorney/client privilege and/or work product protection do not need to be listed or identified on a privilege log. With respect to partially privileged and redacted documents, Parties agree not to include such items in the privilege log provided that the un-redacted portions convey sufficient information to ascertain the validity of the item's Privilege designation. Additionally, the Parties agree to meet and confer on whether a Metadata only Privilege Log (with additional assertions of type of privilege claimed) is appropriate in this case.

**IV.     DATA PROCESSING AND PRODUCTION**

The following provisions shall generally govern the production format for ESI and are subject to the other provisions contained herein.

**A.     Bates Numbering.** All ESI and Paper Discovery produced must be assigned a Bates number that shall always: (1) be unique across the entire document production; (2) maintain a constant length (zero/0-padded) across the entire production; (3) contain no special characters or embedded spaces; (4) be sequential within a given document; and (5) shall not obscure any underlying content.

**B.     TIFF Format.** Except as may otherwise be set forth herein, the Parties shall produce ESI in standard Group IV black and white single-page TIFF format at 300 x 300 dpi resolution and 8.5 x 11-inch page size, except for documents that in the Producing Party's reasonable judgment require a different resolution or page size.

    1.     If any materials produced in TIFF format as set forth above are illegible, unreadable, or not fully viewable in the designated format, the Receiving Party may request the Producing Party to produce in an alternative format or in the document's Native File format. The Producing Party shall not withhold original, Native Files for such documents absent a showing that

such production would be overbroad or unduly burdensome. Should such objections be asserted, the Parties shall meet and confer on the reasonableness of the request as well as a reasonable and cost-effective means of providing the requested documents.

2. Each Party reserves the right to request that specific documents or files be produced in color or in some other form or format appropriate to the original document. Should objections be asserted, the Parties shall meet and confer on the reasonableness of the request as well as a reasonable and cost-effective means of providing the requested documents.

3. All images are to be named after the Bates Number assigned to that page. File names cannot contain embedded spaces. The number of files per folder should not exceed 1,000. Images must be accompanied by an Opticon image cross reference file ("OPT"). Every page in the production set must have a line referenced in the OPT file.

C. **Replacement, Modified, and/or Supplemented Files.** Any documents that are replaced, modified, and/or supplemented in later productions shall be clearly designated as such, by (1) providing an overlay file with sufficient explanation as to what such file is and contains; or (2) appending a suffix to the bates/production number of the original file consisting of a period followed by a new zero-padded corresponding page number (i.e., R0001**.001**) and by a letter accompanying the production clearly designating such documents as replacements.

D. **De-NISTing.** Electronic file collection shall be "De-NISTed," removing commercially available operating system and application files contained on the current NIST file

list. Identification of NIST list matches shall be through MD5 Hash values. Notwithstanding the foregoing, De-NISTing shall not be applied to attachments to electronic mail messages.

   **E.**  **Duplicate Production Not Required.** A Party need not produce exact duplicates of electronic documents.

   **F.**  **Global Deduplication Across Custodians:** The Parties shall de-dupe across Custodians. Metadata identifying all Custodians in possession of each document that is removed as a duplicate must be produced in the "CUSTODIAN" or "ALL CUSTODIANS" field in the production load file.

   **G.**  **Deduplication:** Electronic non-message files shall be de-duplicated based upon calculated MD5 Hash values for binary file content. Messaging files, including emails and instant message files, shall be de-duplicated based upon MD5 Hash values for the message family, including parent object and attachments. For families, the MD5 Hash is created on the combined hash values of the family members.

   **H.**  **Specific File Types.**

     1.  Word, WordPerfect, Pages, any other word processing program and PDF documents (inclusive of redacted versions of such documents) and Microsoft PowerPoint files, and all other slide show presentation files, will be converted to single page TIFF images and produced consistently with the specifications in this Section IV, except that the accompanying text file shall contain the Extracted Text from each document in place of OCR text, unless the document contains redactions, in which case OCR text may be provided. If the document contains comments or tracked changes, the

TIFF images shall be generated with the comments and/or tracked changes visible.

2. Email and attachments should be converted to single page TIFF images and produced consistently with the specification in this Section IV. If the Producing Party redacts any part of the email before producing it, OCR text may be provided in place of Extracted Text. Attachments shall be processed as though they were separate documents, and the DAT Metadata file shall include a field in which the Producing Party shall identify, for each email, the Bates range of any attachment, and the Producing Party may not break up "parent/child" relationship between email message and its attachment(s).

3. Microsoft Excel files and other spreadsheets will be produced in Native File format. The Producing Parties shall provide a placeholder TIFF image that indicates that the file was produced as a Native File, and Bates number. To the extent feasible, spreadsheets should be produced with native redactions.

4. Digital photographs will be produced as image files at their original resolution with Bates numbers branded onto them.

5. Video and audio files, schedule files (e.g., Primavera, etc.), and other digital media not covered above (i.e., CAD/AutoCAD, etc.) shall be produced in their Native File format. If the audio files are maintained in a non-standard format, they should be produced in a standard audio format, including but not limited to MP3 or WAV format.

6. Embedded files shall be treated as though they were separate files, except that the DAT Load File shall include a field in which the Producing Party shall identify, for each document containing an embedded file, the Bates range of any such embedded file. This Bates range may be identified in the same field as the Bates range of an email attachment.

7. Compression file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

8. Before any Party produces any other kinds of electronic data, including databases, computer programs or software, the Parties will meet and confer to determine a reasonably useable form for the production.

**I.** **Load Files**: The images shall be accompanied by (i) the appropriate Load Files to accommodate the other Party's counsel's document review platform, and (ii) a "DAT load file" which will populate Metadata fields identified in TABLE 1 below, in a searchable flat database environment, containing one line for each document.

**J.** **Metadata and Metadata Fields.** The Parties agree to produce, if available, the below listed Metadata.

**TABLE 1**

| Field Name | Description | Doc Type[1] |
|---|---|---|
| BEGBATES | First Bates number of each document being produced | All |
| ENDBATES | Last Bates number of each document being produced | All |
| BEGATTACH/ BEGIN FAMILY | First Bates number of family range (will not be populated for documents that are not part of a family) | All |

---

[1] As used herein, "Edocs" refers to all non-message ESI.

| Field Name | Description | Doc Type[1] |
|---|---|---|
| ENDATTACH/END FAMILY | Last Bates number of family range (will not be populated for documents that are not part of a family) | All |
| CUSTODIAN | Name of person or data source (non-human) from where documents/files are produced. Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions (e.g., Smith, John A. and Smith, John B.). Department or organization name for non-electronic documents or documents that are accessible for editing by more than a single user on a shared network drive. | All |
| FROM | Sender of an email | Email |
| TO | Addressee(s) of an email | Email |
| CC | Recipient(s) copied on an email | Email |
| BCC | Recipients blind copied on an email | Email |
| SUBJECT | Subject line of the email | Email |
| SENTDATETIME/ DATE SENT | Date and time the email was sent (may be parsed into separate fields) | Email |
| RECEIVEDDATETIME /DATE SAVED | Date and time the email was received (may be parsed into separate fields) | Email |
| AUTHOR | Author of document | Edocs |
| CREATEDATETIME/ DATE CREATED | Date and time the document was created (may be parsed into separate fields) | Edocs |
| LATEMODDATETIME /DATE MODIFIED | Date and time the document was last modified (may be parsed into separate fields) | Edocs |
| FILESIZE | Size of application file document/email in KB | All |
| FILEPATH | Email: Full file path where original email was stored Edocs: Full file path where application file was originally stored | All |
| FILEEXT/EXTENSION | File extension of the native file | Edocs |
| FILENAME/DOC TITLE | Name of the application file, including file extension | Edocs |
| DESIGNATION | Confidentiality designation assigned to the document pursuant to protective order in this case | All |
| NATIVE FILE | Link to the native email or application file | All |
| HASH VALUE/MD5 HASH | Hash value of each email or application file | All |
| TITLE | Title field value extracted from the metadata of the original file | All |
| TIME ZONE | Time zone | Email |
| TEXT | File path for OCR or Extracted Text files | All |
| ALL CUSTODIANS | Unless CUSTODIAN is a multi-value field, additional custodians who possessed a duplicate copy of an email or application file | All |

K. **Paper Discovery**. Paper documents shall be produced as TIFF images (consistent with the specifications set forth herein). The production shall include the appropriate Load File which will, at a minimum, contain the following fields:

1. Beginning Production Number (ProdBeg);

2. Ending Production Number (ProdEnd);

3. Beginning Attachment Production Number (BegAttach);

4. End Attachment Production Number, (End Attach);

5. Custodian/Source;

6. Confidentiality (if applicable);

7. Document Type;

8. Page Counts; and

9. OCR.TXT file.

In scanning paper documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (i.e., paper documents should be logically unitized).

V. **SUBPOENAS TO THIRD PARTIES**

A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Stipulation and Order with the subpoena and state that the subpoenaed party must produce documents in accordance with the specifications set forth herein. If the subpoenaed party cannot comply with the terms of this Stipulation and Order, it shall confer with the Issuing Party and, if the subpoenaed party and the Issuing Party cannot reach agreement, the subpoenaed party shall seek relief from the Court. The Issuing Party shall produce any documents obtained pursuant to a third-party subpoena to all other Parties within three calendar days of receipt. Nothing in this

Stipulation and Order is intended to or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or third parties to object to a subpoena.

## VI. CLAWBACK

A. The inadvertent production or disclosure of documents or ESI, that are privileged or work-product protected, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

B. In the event that a Party discloses any document, ESI, or information that is subject to a claim of attorney-client privilege, work product protection, or any other privilege, immunity, or protection from disclosure, the Producing Party shall promptly upon discovery of such disclosure notify the Receiving Party and request the return or destruction of such document, ESI, or information in writing. Upon receipt of such request, the Receiving Party: (i) shall not use, and shall immediately cease any prior use of, such information; (ii) shall take reasonable steps to retrieve the information from others to which the Receiving Party disclosed the information; and (iii) shall, within five (5) business days of the Producing Party's request, destroy all copies thereof; and confirm to the Producing Party the destruction of all copies of the document, ESI, or information not returned to the Producing Party. If the Receiving Party objects to the return or destruction of such documents, the Producing Party may seek appropriate relief from the Court. If the Receiving Party becomes aware that it is in receipt of information or materials which it knows or reasonably should know is privileged, the Receiving Party shall

immediately take steps to: (i) stop reading such information or materials, and (ii) notify the Producing Party of such information or materials.

VII. **MISCELLANEOUS**

    A. **Headings.** All headings used in this Stipulation and Order are for descriptive purposes and shall not be interpreted to supersede or contradict the contents of this Stipulation and Order.

    B. **Destruction or Return of ESI.** Any ESI produced herein shall be and remain the property of the Producing Party, and at the conclusion of this action, including any and all appeals, all such ESI produced shall be either destroyed or returned to the Producing Party in accordance with the Protective Order in this matter.

    C. **Effective Duration**. The terms of this Stipulation and Order shall survive and remain in force and in effect after the final termination of this action regarding any retained ESI, including the contents thereof.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**D.** **Modification.** Nothing herein shall prevent the Parties from modifying this Stipulation and Order with respect to ESI and any such modifications shall be memorialized in an amended stipulation and order.

**STIPULATED AND AGREED**:

| | |
|---|---|
| FRANKFURT KURNIT KLEIN + SELZ, PC | DAY PITNEY LLP |
| By: */s/ Kimberly M. Maynard* <br> Kimberly M. Maynard <br> Molly Rothschild <br> 28 Liberty Street, 35th Fl. <br> New York, NY 10005 <br> Tel.: (212) 980-0120 <br> kmaynard@fkks.com <br> mrothschild@fkks.com <br><br> *Counsel for Plaintiff New York Road Runners, Inc.* | By: */s/ Richard H. Brown* <br> Richard H. Brown <br> 605 Third Avenue, 31st Fl. <br> New York, NY 10158 <br> Tel.: (212) 297-5854 <br> rbrown@daypitney.com <br><br> *Counsel for Defendant New York City Runs, Inc.* <br><br> IT IS SO ORDERED this 9th day of May , 2024. <br><br> *Joseph A. Marutollo* <br> U.S. Magistrate Judge Joseph A. Marutollo |